NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 12-131 (SRC) |
| v. : | |
| MICHAEL CALABRETTA : | **OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Defendant Michael Calabretta ("Defendant" or "Calabretta") for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), which Defendant bases on his underlying medical conditions and the threat to his health posed by the covid-19 pandemic. The United States of America (the "Government") has opposed the motion. In reviewing this motion, the Court has considered the submissions on the docket, as well as other supporting documents shielded from public access in light of the sensitive medical information they contain. For the following reasons, it will deny the motion.

### I. BACKGROUND

Calabretta is a 52-year-old man presently incarcerated in the minimum security satellite camp at USP Lompoc ("Lompoc") in California. He has been diagnosed with hypothyroidism and high cholesterol and is currently receiving treatment for both of these conditions at Lompoc. Calabretta also claims to suffer from chronic obstructive pulmonary disorder ("COPD"). Based on his health issues and the ongoing covid-19 pandemic, Calabretta filed a request with the Bureau of Prisons ("BOP") on about May 29, 2020 for compassionate release under 18 U.S.C. §

3582(c)(1)(A). The BOP denied this request on or about July 24, 2020, finding that Calabretta did not meet the criteria for release based on medical circumstances. Calabretta thereafter filed this motion under the First Step Act on August 14, 2020. In his submission to the Court, Calabretta notes that he has only 15 months left on a 100-month sentence.

The sentence Calabretta is serving arises out of his role in a drug trafficking organization. In brief, Calabretta acted as the New Jersey distributor and logistics manager for an organization that trafficked large quantities of marijuana from California to be sold in the New York/New Jersey metropolitan area. As part of the operation, the drugs were stored in the home of one member of organization and then distributed to high volume sellers in exchange for U.S. currency, which was mailed back to the dealers in California. The investigation into this drug trafficking operation revealed that, between late 2009 and October 2010, Calabretta personally moved millions of dollars' worth of marijuana and laundered money associated with the drug sales. He was arrested on October 13, 2010 and thereafter charged, along with ten co-defendants, for his activity in the operation.

On March 15, 2013, Calabretta pled guilty to two charges: conspiracy to distribute and possess with the intent to distribute more than 100 kilograms of marijuana contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), in violation of 21 U.S.C. § 846, and conspiracy to launder proceeds of drug trafficking contrary to 18 U.S.C. § 1956(a)(1)(A)(i), in violation of 18 U.S.C. § 1956(h). He was sentenced on September 9, 2014. Although the applicable range under the United States Sentencing Guidelines was for 188 to 235 months' imprisonment, the Court sentenced Calabretta to 120 months on each count, with the sentences to run concurrently. On October 20, 2016, the Court reduced the sentence to 100 months' imprisonment.

**II.    DISCUSSION**

Defendant moves for modification of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). This statutory provision authorizes a court to reduce a defendant's sentence and order compassionate release if the court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate that reducing the defendant's sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A). Pursuant to the First Step Act of 2018, a motion for such relief may be brought by either the Director of the BOP or by the defendant himself once the defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020).

As a threshold matter, there is no dispute that Calabretta has met the statutory exhaustion requirement. Exhaustion under the statute requires one of the following: (1) the defendant inmate must fully pursue administrative appeal of the BOP's decision not to file a motion on the defendant's behalf or (2) wait until "the lapse of 30 days from the receipt" by the warden of the defendant's facility of the defendant' request that a motion be filed. 18 U.S.C. § 3582(c)(1)(A). Prior to filing this motion, Calabretta applied to the BOP for compassionate release, on the basis of his medical conditions and the heightened risk of becoming severely ill with covid-19, and the BOP declined to grant Calabretta relief or pursue a motion on his behalf. Having found that Defendant exhausted his administrative remedies, the Court proceeds to consider the merits of the instant motion.

First, the Court must determine whether Defendant has presented "extraordinary and compelling reasons" for a reduction in sentence. The Court notes that the statute itself does not define the key terms "extraordinary and compelling," apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release. See, e.g., United States v. Rodriguez, 2020 WL 1627331, at *5-6 (E.D. Pa. Apr. 1. 2020) (analyzing the "flexible catchall provision" set forth in the First Step Act and finding that it provides courts with leeway to consider circumstances outside of the guidelines published by the Sentencing Commission and the BOP). In this case, Calabretta claims his underlying health conditions place him in great danger of serious illness or death should he contract the coronavirus and develop the related disease, covid-19. Of particular significance to this evaluation, the Centers for Disease Control and Prevention ("CDC") has identified medical conditions that have been found to increase an individual's risk of developing severe illness if infected with the covid-19 virus.[1] These include COPD, which Calabretta claims to have. The problem with Calabretta's application, however, is that his medical records do not support his claim. The Government notes in its opposition that Lompoc has turned over Calabretta's medical records from 2018 through 2020, and the records "make no mention of the Defendant having a diagnosis of COPD, complaining of any respiratory issues or . . . [needing] oxygen." (Gov't Opp. at 5.) Defendant does not dispute this assertion. His sole support for his claim of COPD is an insurance record pertaining to a September 2011 doctor's appointment that was billed using a CPT code associated with a COPD diagnosis. Calabretta does not submit any proof, such as a doctor's affidavit, test result, or other medical record, demonstrating that he has in fact been

---

[1] See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (accessed Oct. 13, 2020).

4

diagnosed with COPD. As to the other ailments Calabretta's records reflect, hypothyroidism and high cholesterol are not conditions that the CDC has found to increase the risk of severe illness from covid-19. Moreover, the medical records from Lompoc indicate that he is currently receiving medication and adequate medical care for these conditions. Though not argued as a basis for compassionate release, Calabretta also asserts that he has a history of smoking. The Court notes that just days ago the CDC added smoking to its list of underlying conditions which elevate the risk of severe illness from the virus that causes covid.[2] As a whole, however, Calabretta's application fails to present a substantiated claim that he suffers from health conditions which, in light of the covid-19 pandemic, amount to a compelling reason for his release.

Second, for this same reason, Calabretta's application fails to persuade the Court that granting him a compassionate release would be consistent with the Sentencing Commission's applicable policy statement.[3] The statement expresses, in relevant part, that compassionate release may be appropriate when the defendant is:

---

[2] Id.

[3] While the policy statement pre-dates the First Step Act, it nevertheless provides "helpful guidance" on the circumstances which rise to reasons warranting relief under Section 3582(c)(1)(A). United States v. Lisi, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (observing that the policy statement, though issued prior to the First Step Act, remains relevant to a court's analysis); see also Rodriguez, 2020 WL 1627331, at *6 (holding that the policy statement "remains informative" in evaluating a motion under the First Step Act and citing various cases holding the same). The Court also consults the Sentencing Commission's applicable policy statement in light of the plain language of 18 U.S.C. § 3582(c)(1)(A)(i), which directs courts to determine whether a modification of the sentence is consistent with the policy statements.

>> (I)   suffering from a serious physical or medical condition,
>
>> (II)   suffering from a serious functional or cognitive impairment, or
>
>> (III)   experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(a)(ii). Calabretta has not demonstrated that he suffers from a serious health condition, of the kind contemplated in the Sentencing Commissions' application note on compassionate release applications, nor for that matter, that he suffers from a condition that substantially impedes him from performing self-care in a custodial setting.

Finally, the applicable factors listed in 18 U.S.C. § 3553(a) weigh against granting Calabretta's motion for a reduction of sentence. Those factors include, among other things, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense [and] . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B). Prior to the instant criminal matter, Calabretta had a history of felony convictions, including for death by auto, providing false information to law enforcement, and violation of probation. His criminal history and record of re-offending militate against release. The seriousness of his instant offenses and need for deterrence also militate strongly against release. The sentence Calabretta is currently serving arises out of a large scale drug trafficking and money laundering operation, in which Calabretta played a critical role

6

distributing the drugs for his own monetary gain. Calabretta committed these offenses knowingly and, despite previous criminal penalties, was unable to refrain from engaging in further criminal conduct. The sentence imposed by this Court takes into consideration the serious nature of Calabretta's offenses, the need for specific deterrence, and the need to deter others from engaging in this kind of criminal conduct. While Calabretta points out that he has already served approximately 85 of the 100 months to which he was sentenced, this factor does not outweigh the considerations that count against granting compassionate release in the instant case. Cf. United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020) (holding that a district court may consider the time remaining on a defendant's sentence in evaluating whether to grant a motion for compassionate release). The Court must note that the sentence Calabretta ultimately received falls far below the guidelines range. Further reducing his sentence would undermine the goals and purpose of the penalties the Court imposed on Calabretta for his criminal conduct.

      Thus, on balance, the considerations applicable to a motion for compassionate release weigh decidedly against granting Calabretta the relief he seeks. Of course, the Court is mindful of the risks and challenges posed by the current pandemic and in particular the high contagion rate in Lompoc as compared to other federal prisons. It further acknowledges that in a prison environment, achieving social distancing is challenging and, at times, impossible. Nevertheless, this reality of incarceration is not enough to warrant a defendant's release. The Court agrees with the Third Circuit's observation that the current pandemic, as a general matter, and the mere possibility of contracting Covid does not, without more, constitute an extraordinary

circumstance. See Raia, 954 F.3d at 597 (acknowledging the threat of the disease to high-risk inmates in federal custody but expressing the view that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . ..").

Finally, the Court addresses Defendant's request that, as an alternative to release, the Court order him to serve the remainder of his sentence in home confinement. The Court has no authority to issue such an order. An application for home confinement is distinct from a motion to reduce the term of imprisonment under Section 3582(c), which does not authorize the Court to dictate the place of confinement. Defendant's request for home confinement under the custody of the BOP is governed by 18 U.S.C. § 3624(c)(2), as amended by Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP. See United States v. Moore, 2020 WL 4282747, at *8 (D.N.J. July 27, 2020); see also 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . .."). This Court simply has no jurisdiction to issue any orders predicated upon 18 U.S.C.§ 3624(c)(2) or its amendments under the CARES act. See United States v. Viteri, Crim No. 19-44 (FLW), slip op. at 4 (D.N.J. April 10, 2020); United States v. McGimsey, 2019 WL 2396574, at *3 (W.D. Ky. June 6, 2019) (holding same).

### III.   ORDER

For the reasons set forth above,

**IT IS** on this 14th day of October 2020,

**ORDERED** that Defendant Michael Calabretta's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) [ECF 145] is **DENIED**.

                                                                       s/ Stanley R. Chesler
                                                            STANLEY R. CHESLER
                                                     United States District Judge